# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Case Number: 23-CR-382 (DLF)** |
| **BROGAN WELSH,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF
## <u>PRETRIAL DETENTION OF DEFENDANT BROGAN WELSH</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in support of its request that Defendant Brogan Welsh be detained pending the trial of this matter pursuant to 18 U.S.C. § 3142(f)(1)(A), because the offense involves a crime of violence and because there is no condition or combination of conditions that will reasonably assure the appearance of the Defendant or the safety of any person and the community. The Defendant was arrested during the early morning hours of October 20, 2023 (EST), and he has been charged via Criminal Complaint with the Distribution of Child Pornography, in violation of Title 18 United States Code Section 2252(a)(2). The Government now files this Memorandum to supplement the record before the Court.  As detailed below, an analysis of the factors set forth in 18 U.S.C. § 3142 leads to the conclusion that detention is appropriate.

## <u>APPLICABLE LEGAL STANDARD</u>

The Distribution of Child Pornography is a felony under chapter 110 and is, therefore, a crime of violence.  Furthermore, it is also an offense involving a minor victim under section 2252(a)(2) and thus, under 18 U.S.C. § 3142(e)(3)(E), creates a rebuttable presumption that no

condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. This presumption "operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (observing that the presumptions in § 3142(e) "are rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released"); *see also United States v. Hir,* 517 F.3d 1081, 1086 (9th Cir. 2008). Even if the defendant does not pose a flight risk, danger to the community by itself is sufficient reason to order pretrial detention. *United States v. Salerno*, 481 U.S. 739, 755 (1987).

In determining whether a defendant has overcome that presumption, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). Even when a defendant has offered evidence to rebut the presumption of dangerousness, the presumption remains a factor in the court's analysis of the § 3142(g) factors. *See United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1983) ("Use of that word [rebutted] in this context is somewhat misleading because the rebutted presumption is not erased. Instead, it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."). As the Sixth Circuit has observed, "[t]he presumption [of dangerousness] remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should

2

ordinarily be detained prior to trial." *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010) ("To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm.'").

## I.  <u>Analysis</u>

For the reasons that follow, the Government submits that that the Defendant cannot rebut the presumption that he shall remain detained, as there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community.

### A.  **Nature and Circumstances of the Charged Offense**

On December 2, 2020, a Task Force Officer (TFO) for the FBI, Washington Field Office, was acting in an undercover capacity (UC), posing as a father with a nine-year-old son, when he was invited to join a private KIK group. The purpose of this group was to discuss the sexual abuse of minor boys and to share of Child Sexual Abuse Material (CSAM).  A KIK user, "gayboy69freak," subsequently identified as the Defendant Brogan Welsh, sent a direct message to the UC stating that he was a 28-year-old male residing in Richmond, Virginia, with a sexual interest in children as young as five years old.

The Defendant expressed a desire to travel to Washington, DC in order to sexually abuse the UC's purported nine-year-old son.  Specifically, Welsh told the UC that he wanted to urinate on young children, and he confessed that he had once engaged in sexual acts with his younger cousin.  Over the course of several weeks, Welsh continued to communicate with the UC via KIK, and he frequently expressed his interest in traveling to the DC area in order to sexually abuse the purported nine-year-old boy.

On December 17, 2020, Welsh posted two mega.nz links to the KIK group chat that contained CSAM. These images and videos depict prepubescent children being sexually abused by adult men.  Some of these videos are quite long, spanning between 10 and 20 minutes in length.  Several depict adult men anally and digitally penetrating prepubescent boys.

In the ensuing months, law enforcement issued legal process in order to identify Welsh as the user of the KIK account, and were able to associate Welsh with residences in Washington, DC, North Carolina, and Alaska.  The UC and Welsh continued to communicate sporadically between January 2021 and June 2021.  However, Welsh never traveled into the District of Columbia in order to meet the UC and his purported son, and law enforcement.

On August 4, 2023, FBI Anchorage, in an investigation originally thought to be unrelated to Welsh, obtained a warrant authorizing the search of an Iphone.  A forensic review of this Iphone revealed KIK chats between individuals with the usernames "kirkytillboy" and "captain_awesome."   Through the use of legal process, law enforcement was able to identify Welsh as the user of the KIK account kirkytillboy, and learn that he was residing in Anchorage, Alaska.  During these chats, Welsh expressed a sexual interest in children 6 years old and older, and he discussed the ways in which he wanted to sexually abuse little boys.  At one point during these chats, Welsh admitting to sexually abusing an 8-year-old boy when he was 16 years old.

On October 19, 2023, law enforcement executed a search warrant at Welsh's residence. As law enforcement approached the house, they noticed Welsh sitting in a chair near the front door, with at least one laptop computer on his lap. Law enforcement knocked on the door and Welsh immediately stood up and ran further into his home, carrying a laptop. When Welsh failed to open the door, FBI entered the residence.  Law enforcement later located a laptop computer sitting in Welsh's bedroom on his bed.

Law enforcement read Welsh his *Miranda* warnings and, during the subsequent interview, Welsh admitted that he used KIK and that he fantasized about teenagers. He also told law enforcement that a laptop computer and a cellular telephone located inside the residence belonged to him.  Disturbingly, inside Welsh's bedroom, law enforcement located items including sex toys that are very small and appear consistent with the body size of a child, including: a silicon ring, apparently of the type commonly referred to as a "cock ring;" a bag of "sensory finger rings," which are apparently devices for manual sexual stimulation; and a very small dildo consistent in size with anal penetration. Law enforcement also found the following clothing consistent with a young boy and too small for an adult person of Welsh's size: two pairs of underwear and one pajama bottom. At the time law enforcement located Welsh and searched his residence, a 10-year-old boy was, in fact, living inside Welsh's home.

As detailed above, the nature and circumstances of this case weigh heavily in favor of detention.  The Defendant's crimes have been perpetrated against the most vulnerable members of our society:  children.  Children depicted in images and videos showing their sexual abuse are traumatized and victimized in the worst way imaginable at the time the images were created, and they are re-victimized and re-traumatized each and every time an individual, like the Defendant, views the images for their own sexual gratification. As explained by the Sixth Circuit in a child pornography case:

> ...we have numerous victims in a case like this, not one victim. Every image of a child, every image of a non-adult engaged in any type of sexual activity or any type of pose without clothing or any type of exploitation constitutes an additional case of victimizing a child. Without a demand for that type of information and that type of viewing from persons like this defendant, we don't know how many child abuse cases we could prevent. And as long as there is a demand to purchase images of child pornography, there is going to be an unending stream of child abuse of…children who are forced into these roles.

...every image has a child who has been exploited and abused, and that is the concern I have. It is the concern that I have when people are engaged in serially doing this, the effect it has on children throughout the world and the effect it has on their future lives.

*See United States v. Miller*, 665 F.3d 114, 121-122 (6th Cir. 2011)(quoting the district court) (highlighting the grave harm caused to the victims depicted in child pornography images and the evidence that traffickers and possessors of child pornography are the impetus for the creation of more sexual abuse of minors).

Courts have recognized the serious nature of the very offenses that this Defendant has committed, which is why these offenses carry a mandatory minimum sentence of five years. *See* 18 U.S.C. § 2252(b)(1).  As such, the nature and circumstances of the Defendant's offense weigh heavily in favor of detention.

**B. The Weight of the Evidence Against the Defendant**

The evidence against the Defendant is extremely strong.  The Government is in possession of the chats detailed in the Amended Affidavit in Support of the Criminal Complaint, as well as the graphic images and videos contained in the link that this Defendant distributed not only to the UC, but to other individuals with a professed sexual interest in children.  Digital devices were recovered from the defendant's home, and the initial forensic analysis has revealed that he used these devices to communicate with other pedophiles and to disseminate child sexual abuse material.  During an interview with law enforcement, the Defendant admitted to using KIK and to fantasizing about minors, and the initial forensic review of these devices corroborates those statements.  Given the weight of the evidence, there is no doubt that this factor also weighs heavily in favor of detention, as well.

### C. The History and Characteristics of the Defendant

The Government acknowledges that the Defendant does not have any criminal convictions.  However, the fact that the Defendant has no criminal history does not mean that he has not engaged in prior criminal conduct, particularly in offenses involving the online exploitation of minors and the hands-on sexual abuse of children.

This Court is well-aware that the online sexual exploitation of children, such as the distribution of child pornography, and the hands-on sexual abuse of children are crimes that are committed in secret.  This secrecy, combined with the overwhelming presence of digital devices and the near universal access to the internet, makes detection of these criminal offenses difficult. It is not unusual, as was the case for this Defendant, for an offender to only be discovered because he had the misfortune of law enforcement infiltrating a secret group of like-minded offenders, who use the Internet to sexually abuse and exploit children.

The mere lack of an arrest record's significance should also be called into question in cases involving the sexual exploitation and abuse of children, because it is well-known that children often do not disclose sexual abuse, and that these types of crimes are all too often not reported to law enforcement.  Indeed, in the present case there is reason to believe that this Defendant was sexually abusing a little boy; however, this child never disclosed the abuse nor was it reported to law enforcement prior to the execution of the search warrant at this Defendant's home.

In the case of *United States v. Gregory Todd Numan*, Clinical Psychologist Darrel Turner provided expert testimony to the Court to explain why a reliance on the lack of prior criminal history of an offender charged with sexual offenses committed against children does not serve as a reliable indicator of their future risk for reoffending.  *See United States v. Gregory Todd*

*Numan*, 3:160cr000065(TMB)(DAK)(February 26, 2018).  As explained by Dr. Turner:

> "One of the main problems is the fact that these offenses
> are among the most undetected offenses that there are. This
> is not like bank robbery or murder, where it's generally assumed
> and expected that it's going to be detected and reported. We know
> from research that about only about five percent of sexual offenses against
> children are ever reported.
>
> Of those, of that five percent, about another five percent
> result in a conviction. So we're talking about an exponentially
> small number of offenses that are reported and accounted for.
> So it's sort of akin to saying there were only four drunk people in
> New Orleans in Mardi Gras this year because there were only four
> arrests for public intoxication, and it's not a good representation of what's
> actually going on out there. So to say it without the qualifier that,
> hey, this is a gross underestimate, but you know, so far, this is what
> we've been able to find, I think, is misleading and very, very
> dangerous."

at pages 22-23.  *See also* K. London, M. Bruck, S. J. Ceci & D. W. Shuman, *Disclosure of Child Sexual Abuse: What Does the Research Tell Us About the Ways Children Tell?*, 11 PSYCHOLOGY, PUB. POL'Y & L. 1, 194-226 (American Psychological Association, 2005)(finding in a study of adult retrospective victim studies about child sex abuse, approximately 60 – 70% of adults sexually abused as children did not recall disclosing the abuse during childhood); *See also* D. W. Smith, E. J. Letourneau, B. E. Saunders, D. G. Kilkpatrick, H. S. Resnick & C. L. Best, *Delay in Disclosure of Childhood Rape: Results from a National Survey*, 24 CHILD ABUSE & NEGLECT 2, 273-87 (2000)(the results of the study found that only 12% of child rape victims' assaults were reported to law enforcement authorities.).  As such, the fact that the Defendant lacks a criminal record, given the ways in which these types of crimes are committed and the reluctance and inability of the victims to disclose, should be given less weight given the nature of the offense he is currently charged with.

**D. The Nature and Seriousness of the Danger to Any Person or the Community**

The facts and evidence in this case establish that this Defendant represents a grave danger to the community. As mentioned above, the distribution of child pornography presents a serious danger to the community, which results in severe mental, emotional, and physical trauma to the countless number of children who are victimized by offenders, like the Defendant, with a demonstrated sexual interest in children. The Defendant, as a consumer of this material, furthers the demand for new material depicting the graphic, sexual exploitation and abuse of defenseless children. There can be no doubt that it is this type of harm that led Congress to create the statutory presumption of detention in these cases.

That child pornography offenses are serious is a fact noted by the Supreme Court. At least as early as the landmark decision, New York v. Ferber, 458 U.S. 747 (1982), the Supreme Court referenced numerous research materials detailing the harm to children as a result of the production and trafficking of child pornography:

> "[P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography."

Shouvlin, Preventing the Sexual Exploitation of Children: A Model Act, 17 Wake Forest L.Rev. 535, 545 (1981). *See also* Child Exploitation 292 ("[I]t is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions"); Note, Protection of Children from Use in Pornography: Toward Constitutional and Enforceable Legislation, 12 U.Mich.J. Law Reform 295, 301(1979)(interview with child psychiatrist) ("The victim's knowledge of publication of the visual material increases the emotional and psychic harm suffered by the child"). 458 U.S. 758, n.9.

Moreover, as the Eastern District of New York has found:

...the issue is not only defendant's potential abuse of children and his interaction with children if on bail, but also his ability, if he is released on bail, to attempt to possess additional child pornography, or to communicate and interact with (via email, internet, or phone) others involved in the possession, sale, and distribution of child pornography or other sexual abuse of children, which would also create a clear danger by facilitating the criminal and dangerous exploitation of children by other individuals.

*United States v. Reiner*, 468 F.Supp.2d 393, 397 (E.D.N.Y. 2006). The *Reiner* court further found that there were no conditions in that case that could reasonably assure the safety of the community "[i]n this day and age, with devices such as cellphones, Blackberries, and laptops..." Id. at 399; *see also United States v. Blankenship*, 2008 WL 1925137 (S.D.W.Va. April 29, 2008) (S.D.W.Va. April 29, 2008)(unpublished)(noting the ease of accessing the internet by means of various devices and stating "[t]he Court finds that the evidence clearly and convincingly establishes that, confined to his home and electronically monitored, defendant would not be prevented from obtaining the means to access the internet and attempting again to obtain child pornography and in this poses a danger to children and the community"); *United States v. Doyle*, 2007 WL 1097844, *1 (W.D.Va. 2007)(finding danger of future offenses "especially considering that pornographic images of children are widely available on the internet and can be easily accessed by a personal computer"), conviction rev'd on other grounds, 650 F.3d 460 (2011).

As detailed above, this Defendant was able to access messaging applications to discuss the sexual exploitation of children and to traffic in images and videos depicting the violent sexual abuse of children for nearly three years. He did so through the use of a handheld mobile device and the internet – both of which are widely available - which makes these offenses very difficult to detect. Should he be released, this Court will have no assurances that the Defendant would not resume his criminal conduct in accessing the internet to communicate with others and to traffic in child pornography.

It should also be noted that, on June 29, 2021, the Sentencing Commission issued a new report on the Federal Sentencing of Child Pornography Non-Production Offenses. https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-non-production-offenses.  This new report reflects upon the Commission's report from 2012, and compiles data from 2019.  The Commission emphasized the seriousness of non-production offenses, noting that child pornography offenses normalize the sexual abuse of children and may promote existing tendencies towards sex offending and the production of new images.  *See* Report at page 1.  The Commission also found that the rise of the internet facilitated the growth of online child pornography "communities" in chat rooms and other online platforms, which this offender utilized over several years.  *Id.*  While the Commission notes that some of the sentencing enhancements are no longer are helpful in distinguishing among offenders, the Commission noted additional factors that a Court can consider at sentencing, which the Commission found to be helpful in determining the level of danger a particular offender poses to the community:  (1) the content of the offender's child pornography collection and nature of the offender's collecting behavior; (2) the offender's degree of involvement with other offenders, particularly in an internet community devoted to child pornography and child sexual exploitation; and (3) the offender's engagement in sexually abusive or exploitative conduct in addition to the child pornography offense.  *Id.*

As detailed above, law enforcement found the Defendant in a private messaging group dedicated to the discussion of child sexual abuse and the distribution of graphic, violent images depicting such conduct.  He initiated contact with the UC, and discussed his desire to sexually abuse a child. We know from the images that he distributed to this KIK group, as well as his comments about the UC's purported son, that he is sexually attracted to very young children.

This Defendant not only distributed child pornography, but he also discussed a willingness to sexually abuse a child.  Beyond that, there is evidence that he has engaged in sexual contact with a minor, which is still being investigated.  The presence of these additional factors in this case, which have been recognized by the Sentencing Commission as aggravating factors, further demonstrate that there is no condition of combination of conditions that will reasonably assure the safety of any other person or the community should this Defendant be released.

Disturbingly, the Commission's report also detailed findings that, after tracking over 1,000 child pornography offenders who had been released, 27.6 perfect were rearrested within three years.  *See* Report at page 7.  Such a statistic is probably lower than the true percentage that recidivate, because it only measures re-arrest and not offending behavior.  For these reasons, it is clear that the Defendant poses a significant danger to the community and, given these risks, there is no condition or combination of conditions that will reasonably keep the community safe if the defendant is released.  He has been, and continues to be, a danger to some of the most vulnerable members of out community:  children.  As such, this factor weighs heavily in favor of detention.

## CONCLUSION

For all of the reasons set forth above, the consideration of the evidence in this case and the applicable statutory factors, including the presumption that applies in this case, compels the

conclusion that the Defendant should be detained pending trial.

Respectfully submitted,

MATTHEW D. GRAVES
United States Attorney
D.C. Bar No. 481052


   /s/
_____

 Amy E. Larson
Assistant United States Attorney
U.S. Attorney's Office
601 D Street N.W.
Washington, D.C. 20530
 202-252-7863
 Amy.Larson2@usdoj.gov